**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

ROBERT LOGAN MICHAEL,

       Plaintiff,

v.                                   Case No. 2:24-cv-00064

PAMELA GIVENS, *et al.*,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

     This matter is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the Court are Defendants Wexford Health Sources, Inc. and Daniel E. Conn's Motion to Dismiss Complaint (ECF No. 17) and Defendants Shirley Hamrick, Sandra May, and Pamela Givens' Motion to Dismiss (ECF No. 21).

I.     *PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY*

     Plaintiff's complaint arises out of claims that he did not receive his back pain medication, Nortriptyline 50 mg, for a period of time, and was not placed on Sublocade to treat his substance use disorder (hereinafter "SUD"). Plaintiff alleges that these failures violated his constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment. Plaintiff also generally asserts that he was denied a proper intake screening, which led to issues with his medication refills and treatment in

the prison's chronic care clinic ("CCC") where he was to be followed for chronic conditions including Hepatitis C and chronic back pain.

Specifically, Plaintiff alleges that he was transferred from the North Central Regional Jail ("NCRJ") to Mount Olive Correctional Complex ("MOCC") on October 14, 2022 and was given a minimal supply of medications that he was then taking. Among such medications was 50 mg of Nortriptlyne[1] daily for chronic back pain, which had been previously prescribed by a doctor while Plaintiff was incarcerated at the Huttonsville Correctional Center ("HCC"). According to the complaint, upon arrival at MOCC, Plaintiff was also to be initially screened and evaluated for placement in the prison's chronic care clinic ("CCC") for his back pain and Hepatitis C ("HCV"). However, Plaintiff alleges that Defendant Pamela Givens ("Givens"), the Health Services Administrator for Wexford Health Sources, Inc. ("Wexford"), the contracted health care provider at MOCC, and Shirley Hamrick ("Hamrick"), Wexford's Director of Nursing, did not conduct a proper intake screening, which would have advised them that his Nortriptyline 50 mg needed to be refilled. (ECF No. 2 at 5.) He also contends that no blood tests were done, and no individual treatment plan was completed as allegedly required by MOCC Policy Directive 410.00. (*Id.*)

The complaint further alleges that Plaintiff was advised at pill pass that his Nortriptyline had run out and was being reordered. (*Id.*) As further detailed in the complaint, Plaintiff alleges that, despite submitting numerous sick call requests concerning his back pain, which was "persistently ongoing," Plaintiff did not receive his Nortriptyline medication for ten and a half months. (*Id.* at 1-2). He alleges that "many

---

[1] Nortriptyline is an antidepressant that is also used to treat some types of persistent neuropathic pain. *See Nortriptyline for Neuropathic Pain in Adults*, https://pmc.ncbi.nlm.nih.gov/articles/PMC6485407/

days and weeks passed with no pain medication" and he was simply told that he was "on a list to see the doctor." (*Id.* at 5). Plaintiff contends that "[t]his delay in treatment, inadequacy, and negligence of Wexford and employees caused [him] to suffer ongoing pain in violation of [his] Eighth Amendment right to be free from cruel and unusual punishment." (*Id.*)

During this same period, Plaintiff had requested to be placed in the prison's medically assisted treatment ("MAT") program for his SUD. He alleges that, in March of 2023 he was screened and approved for the MAT program, but was told that he would not begin the program until closer to his parole eligibility date in September of 2023. (*Id.* at 5-6). Nonetheless, Plaintiff continued to raise this issue in his sick call requests, along with his complaints of back pain, asserting that the MAT program was 18 months long, and he did not understand the delay in starting it. (*Id.* at 6).

On June 4, 2023, Plaintiff filed a grievance concerning the MAT program, which he claims was fully exhausted to the Commissioner of Corrections but was again told that he would start the program "3 months from parole." (*Id.*) Plaintiff alleges that, at that time, he was within that three-month window but had not started the program. (*Id.*) He further alleges that, on June 13, 2023, he wrote a letter to Givens concerning the delay in starting the MAT program and the denial of his back pain medication. (*Id.*)

On June 15, 2023, apparently at the direction of Givens, Plaintiff met with Defendant Hamrick to discuss other options to treat his SUD. (*Id.*) At that time, Hamrick agreed to give Plaintiff Vivitrol.[2] (*Id.*) During this meeting, Plaintiff also complained about not having any CCC checkup, which Plaintiff alleges was to occur

---

[2] According to Drugs.com, "Vivitrol is a long-acting injectable form of naltrexone, a medication used to treat opioid and alcohol dependence." https://www.drugs.com/vivitrol.html

every six months pursuant to policy. (*Id.*) The complaint does not indicate how Hamrick allegedly responded to that complaint.

Throughout June of 2023, Plaintiff filed additional sick call requests, which he alleges were not acknowledged, and even after writing another letter to Hamrick, he claims "nothing was done." (*Id.* at 6-7). However, on July 6, 2023, Plaintiff alleges that he received a note from Hamrick which renewed a supply of Naproxen, but still did not renew his Nortriptyline prescription. The note further indicated that Hamrick had put in a referral for Plaintiff to be seen by the Mental Health Unit ("MHU") (apparently concerning his SUD treatment) on June 16, 2023; however, Plaintiff alleges that this was not true. (*Id.* at 7).

Because no follow-up concerning his sick call requests had occurred within 48 hours of submission of those requests (an alleged violation of policy), on July 10, 2023, Plaintiff sought help from Nurse Kelly Foster ("Foster") (who is not a defendant herein). Foster told Plaintiff she did not know where his sick call requests were and that he should fill out another one, which he did. (*Id.*) That same day, a therapist from PSIMED, the prison's contracted mental health provider, came to see him and told him that she had just received his Vivitrol referral, which Hamrick had allegedly submitted almost a month earlier on June 16, 2023. (*Id.*) Thus, Plaintiff alleges that Hamrick lied about that submission.

On July 11, 2023, Plaintiff was seen by Foster who renewed his prescription for a dandruff shampoo and hydrocortisone cream but could not explain why his other medication(s) had not been reordered. (*Id.* at 8). Foster also stated that she would address the issue with Physician's Assistant Sandra May ("May"). May subsequently directed Foster to give Plaintiff a five-day supply of Tylenol and told him to fill out

4

another sick call request.  May also stated that she was not re-ordering his Nortriptyline. (*Id.*)  Thereafter, on July 15, 2023, Plaintiff filed another sick call request addressing May's "unwillingness to provide him with proper treatment and her refusal to comply with a doctor's order" and asking to see a doctor or other provider.  (*Id.* at 8).  He also filed a grievance concerning May's conduct on July 25, 2023, and continued to file additional sick call requests without relief.  (*Id.* at 8-9).

On August 1, 2023, Plaintiff was seen by PSIMED's psychiatrist, Dr. Thistlethwaite, who changed his MAT medication from Vivitrol to Sublocade.[3]  (*Id.* at 9).  Then, on August 3, 2023, Nurse Practitioner Stanley (who is not a defendant herein) gave him 25 mg of Nortriptyline.  (*Id.*)  However, Plaintiff alleges that May notified him that he would not be starting on his MAT.  (*Id.*)  Thus, on August 22, 2023, Plaintiff put in a sick call request to speak with Dr. Thistlethwaite concerning May's interference with his order to start Plaintiff on Sublocade.  (*Id.* at 9-10).

Plaintiff further alleges that he received no CCC treatment until August of 2023. He alleges that, on two occasions in August, Givens came and tried to draw his blood but was unsuccessful.  On each occasion, Givens allegedly told Plaintiff she would come back the following day to try again, but never came back.  (*Id.*)

After allegedly exhausting his then-filed administrative grievances, on August 23, 2023, Plaintiff wrote a letter addressed to Defendant Conn, Wexford's Chief Executive Officer, which was mailed to Wexford's corporate headquarters in Pennsylvania.  (*Id.* at 10).  The letter addressed "the totality" of Plaintiff's issues with his medical treatment. (*Id.*)  Plaintiff received a response to his letter that was authored by Wexford's "Risk

---

[3] According to Drugs.com, Sublocade (or buprenorphine) is also an extended-release injection in a class of medications called opiate partial agonists that treat opiate use dependence, but it is only administered through a special program.  https://www.drugs.com/sublocade.html

Management Department." Thus, it is unclear whether Conn ever saw the letter. (ECF No. 2 at 10; ECF No. 2-1 at 16). Plaintiff alleges that the response had a "broad bland answer" and was "no help." (ECF No. 2 at 10).

The complaint further alleges that, on September 17, 2023, Plaintiff submitted one more sick call request seeking to have his Nortriptyline increased from 25 mg to 50 mg, as originally prescribed. (ECF No. 2 at 10). Plaintiff further states that, on September 28, 2023, "after nearly 10½ months of [his] medication being denied and delayed," the prescription was increased back to 50 mg. (*Id.*)

Then, on October 3, 2023, Plaintiff's blood was successfully drawn "after a 3-month delay." (*Id.*) However, Plaintiff states that he was also diagnosed with scabies that day and was "prescribed antibiotics." (*Id.* at 10-11). Although neither Plaintiff nor the medical providers could pinpoint when he contracted scabies, Plaintiff alleges that "prompt, proper, and adequate healthcare could have diagnosed and saved [him] days/weeks/months even of constant headaches, rashes, and itching, possibly even prevented the scabies." (*Id.*)

Plaintiff further alleges that, on or about October 19, 2023, Vivitrol was prescribed for his SUD by a Dr. Canterbury (who is not named as a defendant herein), but he did not receive the same until November 8, 2023, after Dr. Thistlethwaite again intervened and ordered it. (*Id.* at 11). Nonetheless, at Plaintiff's request, the Vivitrol was discontinued in January of 2024, after he complained of migraine headaches and "cloudy" mental status. (*Id.*) Plaintiff further states that, in January of 2024, x-rays of his back were taken as part of his CCC. He again contends that Wexford and its personnel had not complied with the requirement to complete his CCC review every six months. (*Id.* at 11-12).

6

In sum, Plaintiff alleges that, because of Defendants' conduct, he suffered with back pain for ten and a half months and was denied five months of SUD/MAT treatment, which he was still seeking. (*Id.* at 12). He further contends that he suffered from scabies for an "unknown amount of time" without treatment. (*Id.*) He alleges that all of this was "avoidable had Wexford and [its] employees conducted treatment according to policies and procedures." (*Id.*)

As to specific Defendants, Plaintiff alleges that Defendant May twice directly interfered with a doctor's orders when she denied a reorder of his previously prescribed Nortriptyline for his chronic back pain and when she interfered with Dr. Thistlethwaite's order to start him on MAT medication. He claims that this conduct violated his Eighth Amendment rights and further contends that May's interference was "in retaliation for filing of a grievance about his medication," which also implicates his First Amendment rights, although the complaint contains no specific reference to the First Amendment. (*Id.* at 13). If Plaintiff intended to raise such a claim, he would need to more fully allege it in detail in an amended complaint (*see infra*).

With respect to Defendant Hamrick, Plaintiff alleges that she "caused delays in [his] sick calls, chronic care clinics, and [his] MAT" (which he claims took five months to obtain). Plaintiff further contends that Hamrick's "failure to properly treat and maintain a chronic care clinic left [him] in pain for ten and a half months." (*Id.*) Finally, Plaintiff alleges that Hamrick interfered with his ordered treatment, the need for which she was aware, based upon the letter that he wrote to her and her own meetings with him, all of which he contends violated his Eighth Amendment rights. (*Id.*)

Plaintiff further contends that Defendant Givens provided no treatment plan for his CCC, breached her administrative duties, and generally failed to oversee Wexford's operations in violation of policy. Consequently, he seeks to hold her liable for his chronic conditions going without treatment, despite her direct knowledge of his issues based upon his letter to her. He further alleges that Givens failed to complete his required labs for CCC and allowed his scabies to go untreated for some time. (*Id*. at 13-14). Plaintiff contends that Givens' conduct also violated his Eighth Amendment rights. (*Id*. at 14).

Finally, Plaintiff alleges that Defendant Conn was "informed of all these violations" by Plaintiff's letter, but "failed to address the issues" which, he contends, constitutes "deliberate indifferen[ce] to his serious medical needs" in violation of his Eighth Amendment rights. (*Id*. at 14). He further contends that Wexford "employs and assures that all policies and procedures are followed and in place" and its "lack of supervision and failure to maintain these policies" has "caused him to suffer numerous issues in [his] medical treatment" in violation of his Eighth Amendment rights. (*Id*.)

Plaintiff seeks monetary damages against each defendant and further seeks declaratory and injunctive relief, including an order for a complete physical, a referral to a back pain specialist, and an MRI of his back to assess damage thereto. (*Id*.) He further seeks an order restoring his MAT with Sublocade. (*Id*.)

On April 30, 2024, Defendants Wexford and Conn filed a Motion to Dismiss (ECF No. 17) and Memorandum of Law in support thereof (ECF No. 18). On May 6, 2024, Defendants Hamrick, May, and Givens also filed a Motion to Dismiss (ECF No. 21) and Memorandum of Law in support thereof (ECF No. 22). Both motions are fully

briefed and ripe for resolution.  The undersigned will discuss the specific arguments made in the parties' briefs as necessary *infra*.

## II.    STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  This Court then "assume[s] the[] veracity" of the

complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

Because the Defendants' motions are motions to dismiss under Rule 12(b)(6), the undersigned will only address the sufficiency of the complaint itself and declines to consider any other documents of record at this stage of the proceedings. *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (when considering a Rule 12(b)(6) motion, it is generally inappropriate for the district court to consider documents outside the complaint, or integral thereto, where the parties have not had an opportunity for reasonable discovery).

## III.    DISCUSSION

### A.    The complaint fails to state a plausible constitutional claim against Wexford.

Although not explicitly stated therein, Plaintiff's complaint, liberally construed, appears to allege claims of deliberate indifference to his serious medical need by all Defendants, in violation of the Eighth Amendment's guarantee against cruel and

unusual punishment, as well as a First Amendment claim grounded in retaliation against Defendant May.  The vehicle for such claims is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.  While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law."  *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (emphasis added); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989); *Rendall-Baker v. Kohn*, 547 U.S. 830, 838 (1982).  Because Wexford is a contracted medical provider for the WVDCR, a state agency with oversight of MOCC, the deliberate indifference standard is applicable to the conduct of Wexford and its employees.  *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law").  However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original) (extending "municipal liability" requirements

of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to § 1983 liability of private corporations); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854 (S.D.W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D.W. Va., Dec. 18, 2008) (Faber, J. unpublished); *Howell v. Evans*, 922F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

As noted by Wexford's motion to dismiss, the liability of a private corporation under § 1983 is analogous to municipal liability as set forth in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See, e.g., Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) ("In [*Monell*,] the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via respondeat superior alone. We see this holding as equally applicable to the liability of private corporations."). (ECF No. 18 at 5). Thus, to state a proper claim against Wexford, Plaintiff must sufficiently plead facts, which if true, establish the existence of a corporate policy or custom that allegedly caused injury to him and "a single instance of the complained-of conduct is insufficient to establish that the conduct was undertaken pursuant to policy." (*Id.*) (citing *Revene v. Charles Cnty. Comm'rs.*, 882 F.2d 870, 875 (4th Cir. 1989) and *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The most basic requirement for a successful *Monell* claim is to connect the alleged violation of a federal right to an official policy or custom of the defendant. *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). A *Monell* "custom" must be based

12

on a practice that is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397, 404 (1997); *see also Graening v. Wexford Health Sources, Inc.*, No. 1:20-cv-00400, 2022 WL 2070633, at *4 (S.D.W. Va. June 8, 2022) (Faber, S.J.).

Wexford asserts that there are no factual allegations in the complaint that can plausibly establish that it has a specific policy or custom that led to his constitutional injury. Its memorandum of law asserts:

> Here, the Plaintiff has failed to make adequate factual allegations in this regard. Nowhere in his Complaint does the Plaintiff allege that his alleged injuries were the result of a corporate policy maintained by Wexford. Rather, he alleges only individual acts by individual employees. In fact, Plaintiff alleges at several points that the acts and omissions which allegedly injured him were *in violation* of official policy. See ECF Doc. No. 2 at Pgs. 5, 6, 7, 14. Thus, dismissal is appropriate with regard to Wexford.

(ECF No. 18 at 5).

On May 9, 2024, Plaintiff filed a Response in Opposition (ECF No. 23) and Memorandum in support thereof (ECF No. 24). In the Memorandum (hereinafter "Response"), Plaintiff asserts that "Defendants at times shifted blame to Wexford Health Sources, Inc. policies and customs, or a lack thereof[.]" (ECF No. 24 at 2). His Response further attempts to add new allegations to support his claim against Wexford that were not contained in the complaint. Specifically, Plaintiff asserts:

> Plaintiff's claims against Wexford are sufficient because Plaintiff has cited numerous times in his complaint where policies and/or a lack thereof caused and continue to cause him injury. Wexford has a policy of denying further treatment to medical needs it deems are not life threatening no matter how much pain it consistently causes. Wexford is "elective" in treatment to injuries they consider "cosmetic." Wexford has a nurse sick call protocol of 5 days of Tylenol and if the problem persists, to fill out another sick call. This protocol is followed as a custom which only causes the Plaintiff to be in severe ongoing pain for 5 more days, but also charged twice for the same issue [in violation of its own Policy Directive 410.00].

(ECF No. 24 at 5). Plaintiff further contends, for the first time, that Wexford fails to properly staff its facilities. (*Id.*) His Response further contends that the "5-day Tylenol policy" does not properly consider patients with HCV who should "not be taking Tylenol because it is hard on their liver." (*Id.*) Finally, Plaintiff contends that Wexford's policy or custom concerning treatment of SUD "does not reflect reality" and "fails to adjust for the environmental factors of prison life when issuing treatment and medication for this disorder." (*Id.* at 5-6). Plaintiff contends that Wexford receives state and federal funding to provide 18 months of MAT, but only provides inmates with it three months prior to release which, he claims, gives inmates "no chance to successfully complete and benefit from [the program.]" (*Id.* at 6).

Because these new allegations were not contained in the complaint, the Court may not consider them in support of the pending motions to dismiss. *See, e.g., Clement v. Spartanburg Steel Prod., Inc.*, No. 7:22-cv-173-MGL-KFM, 2022 WL 19266406, at *4 (D.S.C. Dec. 2, 2022), *report and recommendation adopted*, 2023 WL 2655183 (D.S.C. Mar. 27, 2023); *Adams v. 3D Sys., Inc.*, No. 0:19-cv-663-JMC, 2020 WL 1283712, at *2 (D.S.C. Mar. 18, 2020) ("[I]n ruling on a motion to dismiss under Rule 12(b)(6), the court may only look to the allegations of the complaint . . . [and] the Court will not consider any additional facts that were not alleged in the complaint.") (citations and internal quotation marks omitted); *Carroll v. United Parcel Serv., Inc.*, No. 1:17-cv-3108-DCC-JDA, 2018 WL 4126450, at *4 (D.S.C. Mar. 15, 2018) ("On a motion to dismiss, the Court will consider only the allegations included in Plaintiff's Complaint.") (internal citations omitted), *report and recommendation adopted in relevant part by* 2018 WL 4111017 (D.S.C. Aug. 29, 2018); *El Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 WL 625575, at *3 n.3 (D.S.C. Feb. 20, 2013) ("The Court,

however, in ruling on a motion to dismiss filed under Rule 12(b)(6), may only look to the allegations of the complaint. Accordingly, the Court will not consider any additional facts that were not alleged in the complaint."). Moreover, these new allegations remain somewhat conclusory.

As pled, Plaintiff's complaint is devoid of non-conclusory allegations and facts sufficient to establish liability against Wexford under a *Monell* theory. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint, as pled, fails to state a plausible Eighth Amendment claim against Wexford. However, "the Fourth Circuit has stated that a court should consider granting plaintiffs, particularly pro se plaintiffs, leave to amend if it dismisses a complaint based on [Rule] 12(b)(6)." *Smith v. Virginia*, No. 3:08-cv-800, 2009 WL 2175759, at *9 (E.D. Va. July 16, 2009) (citing *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999)). In fact, amendment should be refused only if it appears to a certainty that the plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff can state a proper claim. *Id.* at 253. Accordingly, the undersigned **FINDS** that Plaintiff should be granted leave to file an amended complaint attempting to set forth sufficient claims, including his claim against Wexford.

### B. Plaintiff's Eighth Amendment claim against May, Hamrick, and Givens.

As noted by the Memorandum of Law filed by Defendants May, Hamrick, and Givens, deliberate indifference to a prisoner's serious medical needs constitutes the type of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

*Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  But not every "claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Estelle*, 429 U.S. at 105.  (ECF No. 22 at 7-8).  To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a

reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, No. 7:08-cv-00053, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, No. 7:07-cv-00456, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

A prisoner has no constitutional right to the treatment or provider of his choice. *See Estelle*, 429 U.S. at 105-06 ("[i]t is well established that an inmate has no constitutional right to have the treatment he prefers or the best medical treatment available."); *see also Gross v. Dudley*, No. 3:21-cv-805-HEH, 2022 WL 16922819, at *5 (E.D. Va. Nov. 14, 2022) ("an inmate not receiving the optimal level of treatment or the treatment they prefer cannot be the basis for a deliberate indifference claim."); *Goff v. Bechtold*, 632 F. Supp. 697, 699 (S.D.W. Va. 1986) ("Denial of a preferred course of treatment—if in fact such occurred here—does not infringe a constitutional right." (citing *Layne v. Vinzant,* 657 F.2d 468, 473 (1st Cir. 1981) and *Gahagen v. Penn. Bd. of Probation and Parole,* 444 F. Supp. 1326 (E.D. Pa. 1978)); *Vinnedge v. Gibbs*, 550 F.2d

926 (4th Cir. 1977). Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). The undersigned will address Plaintiff's claims against Defendants May, Hamrick, and Givens under these standards.

   1.  Treatment for back pain.

  The undersigned begins by addressing Plaintiff's claim that these defendants interfered with his ongoing treatment by medication or otherwise failed to treat his chronic back pain. For the purposes of these motions to dismiss and as conceded by the defendants, the undersigned presumes that Plaintiff's chronic back pain is a serious medical need sufficient to satisfy the objective prong of the deliberate indifference standard. Thus, the undersigned turns to the subjective component.

  Defendants assert that Plaintiff's claims against Defendants May, Hamrick, and Givens concerning his back pain medication amount to nothing more than a disagreement over the proper course of treatment and a challenge to medical judgment which is not actionable under the Eighth Amendment. (ECF No. 22 at 9). They assert that he "was prescribed Naproxen for his back pain, but wanted to be returned to his Nortriptyline 50 mg prescription." Thus, they assert that Plaintiff is simply alleging that

"they were not treating it in the manner which Plaintiff believed was appropriate" which, at best, might support a claim of negligence. (*Id.*)

However, "[p]reventing an inmate from receiving recommended treatment or denying an inmate access to medical personnel capable of evaluating the need for treatment evinces deliberate indifference to the inmate's medical needs." *Cox v. District of Columbia*, 834 F. Supp. 439, 442 (D.D.C. 1992). "Such indifference can also be manifested by prison doctors in their response to prisoner needs by the intentional denial or delay of access to medical care or the intentional interference with treatment once prescribed." *Id.* (citing *Estelle*, 429 U.S. at 104-05). Thus, an allegation of intentional withholding of pain medication alone may support a reasonable inference of deliberate indifference. *Scott v. Clarke*, No. 3:12-cv-00036, 2012 WL 6151967, *5 (W.D. Va. Dec. 11, 2012).

Here, Plaintiff specifically alleges that Defendant May unjustifiably interfered with his treatment by canceling the previous order of the HCC doctor who prescribed Nortriptyline 50 mg that he had been taking since at least 2018. (ECF No. 2 at 7-8; ECF No. 27 at 2, 6-7). Plaintiff further alleges that, even though he was prescribed alternative medication, such as Naproxen or Tylenol, he either did not receive it or it was less effective, causing him to suffer "10½ months of constant ongoing back pain." (ECF No. 2 at 5, 7-8, 13; ECF No. 27 at 2, 6-7). These allegations, taken as true, could support a finding that May acted with deliberate indifference to Plaintiff's serious medical need. *See, e.g., Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolongs an inmate's pain.") As noted in Plaintiff's Response, "the 4th Circuit rejects the notion that simply because medical staff have provided an

inmate with 'some treatment' that 'they have necessarily provided the inmate with constitutionally adequate treatment.'"  *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).  (ECF No. 27 at 12).

Plaintiff further alleges that Defendants Givens and Hamrick were also deliberately indifferent to his serious medical need concerning his back pain because they failed to conduct an intake screening, where they would have known that a renewal of his Nortriptyline was needed, and further failed to develop an individual treatment plan, as required by policy.  (ECF No. 2 at 5, 13-14).  Additionally, Plaintiff contends that he made both defendants aware of his back pain issue by written letters, repeated sick call requests, and grievances, yet neither of them took any action to timely conduct a chronic care clinic where his back pain issues could be reevaluated and properly addressed, leaving him in pain for ten and a half months.  (ECF No. 2 at 5-7, 13-14). Plaintiff likewise contends that these defendants interfered with the treatment prescribed by his prior doctor and inadequately managed sick call requests, in violation of policy, causing further delays in treatment.  (*Id.* at 13-14).  Significantly, Plaintiff alleges that all three defendants were aware of a continuing problem and not isolated incidents of a lack of medication.  (*Id.*)  Taking these allegations as true, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint states plausible Eighth Amendment claims against Defendants May, Hamrick and Givens with respect to his back pain treatment.

       2.     Treatment for SUD.

Turning to Plaintiff's Eighth Amendment claims concerning his SUD/MAT treatment, Defendants' motion to dismiss asserts as follows:

> The crux of Plaintiff's Complaint concerning his MAT treatment is that there was a five-month delay in him starting on Vivitrol and that he now wants to be switched to Sublocade. First, Plaintiff fails to allege that there has been any harm or injury to him by this alleged delay to start his MAT treatment. This Court has previously held that in order to prevail on a 42 U.S.C. § 1983 claim, the plaintiff must prove that he was injured as a result of the alleged violation of constitutional rights. *See Black v. W. Va. State Police*, 2023 U.S. Dist. LEXIS 175537, *11 (S.D.W. Va. Sept. 2023) (§ 1983 claims require the plaintiff demonstrate but-for and proximate causation. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)). Plaintiff fails to plead any facts that he suffered any injury or damage as a result of this alleged delay.

(ECF No. 22 at 6). Thus, Defendants contend that the lack of any allegation of substantial harm from the alleged delay in starting the MAT program is fatal to Plaintiff's Eighth Amendment claims. (*Id.* at 6-7).

Plaintiff's Response asserts that he has been suffering from "symptoms of his disorder" including "anxiety, loss of appetite, stress, strong impulsive cravings, loss of sleep, and panic attacks, to name a few." (ECF No. 27 at 4). His Response further contends that "Defendants knew of the risk to Plaintiff" and were aware of "several overdoses occurring every week" at the institution. (*Id.* at 5). Plaintiff further avers that Defendants provided him "no treatment whatsoever concerning his MAT treatment and went so far as to interfere with a doctor's prescribed treatment after Plaintiff went [through] mental health and was placed on the Sublocade program." (*Id.*) Plaintiff's Response further asserts that these symptoms "affect his daily activities" and "could result in death if untreated[.]" Thus, he contends that his SUD constitutes a serious medical need and that the Defendants were aware of the serious risk of harm it poses. (*Id.* at 12-13). However, none of these allegations is set forth in his current complaint. Plaintiff was also granted leave to file a sur-reply in which he asserts that he has been prescribed medication for anxiety and other symptom of his SUD that allegedly have

been exacerbated due to the delay in his starting the MAT program – another fact not alleged in the complaint itself.  (ECF No. 36).

Plaintiff's complaint alleges that, over a course of five months or more, he attempted, to no avail, to have the MAT treatment issue addressed through numerous sick calls, and he contends that Defendant Hamrick delayed submitting his referral to the MHU to be started on alternative medication.  (ECF No. 2 at 6-7).  He further specifically alleges that Defendant May interfered with Dr. Thistlethwaite's order to start him on Sublocade.  (*Id.* at 9).  Presuming that, in an amended complaint, Plaintiff could establish some pervasive risk of serious harm from the delay in starting him on MAT, the undersigned believes that Plaintiff could state a plausible Eighth Amendment claim on this basis, but the current complaint is deficient in that regard and his attempts to cure those deficiencies through his subsequent filings fails.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the complaint, as pled, fails to state a plausible Eighth Amendment claim against Defendants May, Hamrick, or Givens based on a delay or denial of MAT treatment for his SUD, but that Plaintiff should be granted an opportunity to attempt to cure the deficiencies of these claims in an amended complaint.

3.    Diagnosis and treatment for scabies.

Turning to Plaintiff's claim that he allegedly went an undetermined period without being diagnosed with scabies, the undersigned proposes that Plaintiff's allegations fail to state a plausible claim of deliberate indifference to a serious medical need.  At the outset, numerous courts have held that scabies is not a serious medical need.  *See, e.g., Fields v. Okoye*, No. 1:15-cv-712(JCC/JFA), 2017 WL 1193054 (E.D. Va. Mar. 29, 2017); *Young v. Slatowski*, No. 07-04840, 2011 WL 1044891, at *5 (E.D. Pa.

Mar. 22, 2011) (Scabies causing skin irritation and scarring did not plausibly give rise to serious medical need); *cf Tsakona v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (holding that skin conditions including "eczema of the feet, seborrhea of the scalp, [and] athlete's foot" are not serious medical needs for purpose of a prisoner's Eighth Amendment right to medical treatment). Thus, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff cannot meet the objective prong of the deliberate indifference standard to demonstrate an Eighth Amendment violation on this basis.

Even if Plaintiff could establish a serious medical need based upon his skin condition, however, his complaint contains no allegations that any of these defendants were actually aware of that condition or any substantial risk of harm therefrom. It does not allege that he specifically complained to May, Hamrick, or Givens about a skin irritation prior to being diagnosed with scabies on October 3, 2023. At best, the complaint alleges that, on June 30, 2023 (three months before), Plaintiff notified Hamrick that prescriptions for dandruff shampoo and hydrocortisone cream needed to be refilled. (ECF No. 2 at 7). He further states that the scabies diagnosis "does explain the hydrocortisone cream I've been complaining about" and he contends that "proper, prompt, and adequate healthcare could have diagnosed and saved me days/weeks/months even of constant headaches, rashes, and itching, possibly even prevented the scabies." (*Id.* at 11). His complaint appears to attribute this failure or lack of treatment to Givens. (*Id.* at 14).

However, Plaintiff's Response adds that he "had been complaining of rashes as far back as the end of 2022" but "no investigation was done into the source or cause of the rashes." (ECF No. 27 at 8-9). Again, Plaintiff appears to attribute this failure to

Givens because she delayed his blood draw and lab work for his CCC. Thus, his Response briefs appear to be asserting that, had his CCC been conducted sooner, in accordance with the policy directive, his scabies may have been diagnosed and treated earlier or somehow prevented. But, again, these facts are not contained in the complaint and the Court may not consider his other filings at this stage of the proceedings. Moreover, allegations that any of these Defendants should have known of a risk of harm to him from such skin irritation would amount to, at most, negligence, which is not actionable under the Eighth Amendment. Thus, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint, as pled, fails to state a plausible Eighth Amendment claim against Defendants May, Hamrick, or Givens based upon the failure to sooner diagnose and treat his scabies.

4.    Treatment for HCV.

Aside from Plaintiff's general allegations that he has HCV which was to be monitored and treated through the CCC, and that the Defendants should have known that prescribing large doses of Tylenol would be hard on his liver, the complaint does not allege that Plaintiff suffered any specific harm related to his HCV. Thus, the undersigned does not construe the complaint to be alleging an Eighth Amendment claim concerning his HCV treatment. Nonetheless, his Response asserts that HCV is a serious medical need which can cause irreparable harm if untreated. Again, however, Plaintiff fails to allege that he suffered any actual harm or exacerbation of his condition because of the Defendants' conduct. Thus, while Plaintiff may be attempting to allege that the failure to initially screen him and conduct his CCC every six months as allegedly directed by policy constitutes deliberate indifference to his chronic HCV, his complaint, as pled,

24

fails to state a plausible Eighth Amendment claim against any of these defendants on that basis.

### C.    The complaint fails to state a plausible claim against Conn.

Plaintiff's complaint also alleges an Eighth Amendment deliberate indifference claim against Defendant Conn, Wexford's CEO, on the basis that Plaintiff wrote a letter addressed to Conn complaining about these medical issues.  His complaint states that Conn "was informed of all these violations via U.S. Mail" and "failed to address the issues which causes him to be deliberate[ly] indifferent to my serious medical needs." (ECF No. 2 at 14).  Conn's motion to dismiss asserts:

> The only allegation against Defendant Conn is that the Plaintiff wrote a letter to Wexford corporate headquarters addressed to him complaining of certain alleged failures in medication administration detailed in the Complaint.  This letter, and the response from Wexford, are attached to the Complaint.  *See* ECF Doc. No. 2-2.  The response is not signed by Defendant Conn, but is noted as coming generally from the Wexford Risk Management Department.  *See id.*  There is no factual allegation in the Complaint which would suggest Defendant Conn – the CEO of a large multi-state corporation – ever personally saw this letter, or was personally aware of any of the alleged circumstances described therein.

(ECF No. 18 at 6).  Consequently, Conn asserts that, to the extent that Plaintiff seeks to hold him liable under a theory of supervisory liability, his allegations do not support such a claim.  (*Id.* at 6-7).

As noted by Conn's memorandum of law, supervisory officials may be held personally liable under Section 1983 for the constitutional violations of their subordinates when "supervisory indifference or tacit authorization of subordinates' misconduct [is] a causative factor in the constitutional injuries [the subordinates] inflict on those committed to their care."  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)); *see also Danser v.*

*Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) ("A supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place.") (citation omitted).  (*Id.* at 6).  To state a supervisory liability claim under the tacit authorization doctrine, a plaintiff-prisoner must allege: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Shaw*, 13 F.3d at 799; *see also Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002); *Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x 140, 144 (4th Cir. 2006).  (*Id.*)

Conn further asserts that "[t]he only facts alleged against him are that he is the CEO of Wexford, and the Plaintiff sent a letter to corporate headquarters addressed to his attention" with no evidence that he personally received it.  (*Id.* at 7).  He further contends that "there are no other allegations which suggest that Defendant Conn was ever subjectively aware of the alleged acts and omissions of which Plaintiff complains, that the alleged conduct [involving] the Plaintiff was pervasive, or to show a causal link between his alleged inaction and the Plaintiff's injuries."  (*Id.*)  Thus, Conn asserts that the complaint fails to state a plausible claim of supervisory liability, or any form of Eighth Amendment claim against him.  (*Id.*)

Plaintiff's Response to Conn's motion contends that the letter, alone, should be sufficient to give rise to a reasonable inference that Conn was "fully aware of all issues

Plaintiff was having and that he was still suffering from a serious medical need." (ECF No. 24 at 8). He further asserts that "nothing was done upon notification of these issues." (*Id.*) He claims that this is "further evidence of a policy or custom or lack thereof that supports the continuation of a constitutional violation" and he opines that "[i]f the CEO of a large multi-state corporation does not make it a practice of opening and addressing problems within his company, it only leaves one to wonder how he is successfully overseeing its operation." (*Id.*) Plaintiff then sets out the *Shaw* supervisory liability standard addressed above, with additional case law; thus, it appears that he is attempting to hold Conn liable for an Eighth Amendment violation under such a theory of liability.

Conn's reply reiterates his position that sending the letter alone is an insufficient basis to hold him liable and asserts that Plaintiff cannot meet all three elements to establish supervisory liability. (ECF No. 25 at 3). Conn repeats his contentions that "[t]here is no indication that Mr. Conn ever personally received this letter or even knows of the letter's existence. Additionally, there are no allegations in the Complaint that the alleged conduct [involving] the Plaintiff was pervasive, or to show a causal link between his alleged inaction and the Plaintiff's injuries." (*Id.*)

The undersigned agrees that the complaint, as pled, does not establish that Conn had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of harm to Plaintiff and that his response was so inadequate as to have an affirmative causal link to Plaintiff's alleged constitutional violations. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint, as pled, fails to state a plausible Eighth Amendment claim against Conn.

### D.    Plaintiff is not entitled to a preliminary injunction.

Although there is no separate motion pending, Plaintiff's complaint includes a request for preliminary injunctive relief in the form of an order requiring the Wexford Defendants to complete a full physical examination of Plaintiff and a referral or consultation with a back pain specialist to evaluate him, including an MRI, and he also requested to have Dr. Thistlethwaite's order honored by restoring him to the MAT program through treatment with Sublocade. (ECF No. 2 at 15). On February 29, 2024, Plaintiff filed a separate memorandum addressing his request for a preliminary injunction. (ECF No. 7). That document asserted that Plaintiff was previously and successfully prescribed Sublocade and again requested that Dr. Thistlethwaite's order be reinstated. (*Id.* at 3-4). The brief also addresses the alleged successes of the MAT program and again accuses Wexford of failing to properly treat inmates under the funding guidelines of the program. (*Id.* at 3-5).

Plaintiff's brief also details his prior pain management treatment, including trigger point injections and epidural injection surgery through West Virginia University Parkersburg's Pain Management Clinic. (*Id.* at 1-2). Plaintiff contends that a prior MRI showed an injury between Plaintiff's L5 and L6 vertebrae and that he was prescribed Nortriptyline 50 mg daily to manage his pain, which was stopped upon his arrival at MOCC. (*Id.*) Plaintiff requests a reevaluation of his back issues to ensure that his injuries have not progressed, and a full physical to evaluate the status of his other health conditions. (*Id.* at 2). He also requests that Wexford and its staff be ordered to stop interfering and delaying his mental health treatments. (*Id.* at 5).

In their motion to dismiss, May, Hamrick, and Givens assert that Plaintiff's claims for injunctive relief must fail because he cannot meet his burden to establish the

28

required elements for preliminary or permanent injunctive relief. (ECF No. 22 at 11-13). Rule 65(a) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction, an extraordinary remedy, only on notice to the adverse party. Fed. R. Civ. P. 65(a). "[P]reliminary injunctions are not to be granted automatically." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). Rather, the discretion of the court to issue such an injunction should be "sparingly exercised." *Id.* at 286. Accordingly, there is an "exceedingly high burden" to obtain preliminary injunctive relief. *Mahmoud v. McKnight*, No. 23-1890, 2024 WL 2164882, at *5 (4th Cir. May 15, 2024).

To obtain a preliminary injunction, a movant must demonstrate that "(1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023); *Mahmoud, supra*, 2024 WL 2164882, at *6 (4th Cir. May 15, 2024). <u>All four</u> factors must be met to justify this extraordinary relief. *Mahmoud*, 2024 WL 2164882, at *6 ("A failure on any factor is a basis for denying a preliminary injunction, regardless of the remaining factors.")

To receive, on a temporary basis, the relief that can be granted permanently after trial, Plaintiff must demonstrate by "a clear showing" that he is likely to succeed on the merits at trial, not just that such success is possible. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). Moreover, Plaintiff must make a clear showing that he is likely to be irreparably harmed, and particular attention must also be paid to the public consequences in employing the extraordinary remedy of an injunction. Thus, Plaintiff

must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Additionally, courts should grant preliminary injunctive relief involving the management of correctional facilities only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); *see also Miles v. Bell,* No. 20-cv-2107, 2021 WL 229674, at *5 (D. Md. Jan. 22, 2021) (finding preliminary injunctive relief was not warranted on prison conditions claims).

Defendants' memorandum asserts that "it is clear that Plaintiff is not likely to succeed on the merits pertaining to any of his claims." (ECF No. 22 at 12-13). They further assert that "he has failed to set forth any facts that he is going to be irreparably harmed by not starting on Sublocade until three months before his parole, as opposed to the Vivitrol he was previously offered" or that he will "be irreparably harmed by not conducting a complete health physical or referring him to a back pain specialist or to obtain an MRI." (*Id.*) Thus, they assert that "[w]ithout these facts, his claim for injunctive relief must fail." (*Id.*) They also assert that Plaintiff has not sufficiently established the third or fourth factors concerning the balance of equities and the public interest and that these decisions should be the judgment of his medical providers. (*Id.*)

Plaintiff's Response to their motion addresses these contentions. Plaintiff asserts that he is likely to succeed on the merits of his claims because "when the facts are read and interpreted correctly, a clear violation of his rights is presented." (ECF No. 27 at 10). His Response further indicates that, after filing his complaint and request for injunctive relief, Defendants "no longer interfered" and his Sublocade was prescribed. He claims that this indicates "some merit" to his claim for MAT treatment. (*Id.*) His Response further suggests that he is no longer seeking relief with respect to that matter.

(*Id.*)  The undersigned construes that statement to mean that Plaintiff is abandoning his claim for prospective injunctive relief concerning MAT treatment (as that issue appears to be moot).  However, the undersigned does not read Plaintiff's statement to be abandoning his claim for monetary damages stemming from the prior denial of such treatment.

His Response further states that he wants to "be reevaluated" to "ensure that he has returned to full health" following his scabies diagnosis and to determine the status of his back pain which, he contends, interrupts daily activities and can cause permanent damage." (ECF No. 27 at 11-12).  He maintains that he has not had any evaluation by a doctor during his entire incarceration at MOCC.  (*Id.*)  He further contends that he has "a clear right to medical treatment" which Defendants have failed in their duty to provide and, "in some cases, [have] been extremely vengeful" about after he filed a grievance.  (*Id.* at 12).  His Response further suggests, however, that his Nortriptyline for his back pain was restored to the 50 mg prescription he was receiving prior to his incarceration at MOCC, so it appears that request for injunctive relief may also be moot. (*Id.* at 13).

Because the undersigned has determined that Plaintiff's complaint, as currently pled, does not sufficiently allege plausible Eighth Amendment claims against the various defendants, but that Plaintiff should be granted leave to amend his complaint to attempt to cure any deficiencies in those claims, the undersigned further proposes that the presiding District Judge **FIND** that, at present, Plaintiff has not demonstrated a likelihood of success on any of his claims or that he will be irreparably harmed if preliminary injunctive relief is not granted.  Therefore, the undersigned further

proposes that the presiding District Judge **FIND** that Plaintiff's request for preliminary injunctive relief should be **DENIED WITHOUT PREJUDICE**.

## IV.    RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY WITHOUT PREJUDICE** Defendants Wexford Health Sources, Inc. and Daniel E. Conn's Motion to Dismiss Complaint (ECF No. 17) and Defendants Shirley Hamrick, Sandra May, and Pamela Givens' Motion to Dismiss (ECF No. 21), and Plaintiff's request for preliminary injunctive relief made in his Complaint (ECF No. 2 at 15) and additional memorandum (ECF No. 7) and **GRANT** Plaintiff leave to file an amended complaint against Defendants within 30 days of the ruling on this Proposed Findings and Recommendation.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474

U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Volk and the opposing parties.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff, and to transmit a copy to counsel of record.

February 24, 2025

Dwane L. Tinsley
United States Magistrate Judge

33